GRIFFY'S LANDSCAPE
MAINTENANCE LLC,
Plaintiff,

v.

The UNITED STATES, Defendant,

and

Easy Tree Services, Intervenor.

No. 99–999C.

United States Court of Federal Claims.

March 2, 2000.

Sam Zalman Gdanski, Jeffrey Gdanski, and Scott Gdanski, for plaintiff.

Opher Shweiki, Department of Justice, Major James Key, U.S. Department of the Army, and Fredrick M. Lewis, Office of Staff Judge Advocate, for defendant.

Danny Dodd, pro se, for intervenor.

## OPINION

BASKIR, Judge.

Griffy's Landscape Maintenance, LLC, has brought a post-award bid protest challenging the award to Easy Tree Services of a best-value solicitation for tree trimming and right of way maintenance services at Ft. Campbell, Kentucky. The central issue of this protest is whether Griffy's missing insurance point of contact information raised a duty of inquiry by the Army. On cross motions, we conclude the Army failed to meet its duty of inquiry. We sustain Griffy's protest.

*Contract History*

Griffy's protest challenges the evaluation of its bid, asserting that the Army improper-

ly failed to award it points for a past-performance factor because of absent insurance point of contact information. A simple phone call would have produced the missing insurance contact name and phone number; that, in turn, would have produced the insurance rating that would make Griffy competitive with Easy Tree, especially since Griffy's bid was 20% lower.

The Army issued its solicitation in late May 1999, and six proposals were received by the July closing date. The Army determined that Easy Tree offered the best value to the Army and awarded it a contract on September 20, 1999.

The Army evaluated past performance and price, with past performance receiving a maximum of 100 points and viewed as slightly more important. One of the past performance subfactors was the experience modification factor (EMF). EMF refers to a rating assigned by a bidder's general liability insurance carrier based upon the bidder's safety record. The number of EMF points awarded is a product of the bidder's insurance rating, calculated by a mathematical formula. The maximum is 20 points.

In the absence of a contact name and phone number for Griffy's insurance representative, there was no rating and, consequently, no EMF points. Griffy asserts that it submitted the contact information, a disputed fact. For the purposes of these cross motions, we assume simply that the required information was missing. We make no assumptions as to why.

Griffy received a total of 47.8 points. Even disregarding the EMF issue, this was far less than Easy Tree. Although Easy Tree's bid price was 20% higher than Griffy's, it won the award. Griffy filed an agency protest.

Griffy's protest challenged its low score for similarity of work and its score of zero points for EMF. It was successful on the first issue, and its point total was revised upward to 73. But its EMF challenge was rejected and its zero rating was unchanged. A renewed agency protest fared no better. Recourse to the General Accounting Office (GAO) was later rejected as untimely.

Finally, on December 14, 1999, Griffy filed its protest in this Court. Griffy asserts here that its insurance rating would have given it the maximum of 20 EMF points, making it equivalent to Easy Tree on past performance, and far less costly. On this basis, it seeks to have the Court award it the contract.

Griffy's complaint also asked for a temporary injunction. After a brief informal hearing, the parties were able to agree on a limited work schedule for Easy Tree, which was incorporated in a Court order. The plaintiff and defendant subsequently filed motions for summary judgment and for judgment on the administrative record, respectively. Oral arguments were held on February 17, 2000.

Intervenor Easy Tree's participation was complicated by its *pro se* status, especially since some of Griffy's information was competition sensitive. However, this information was also set out in Griffy's initial, publicly filed complaint and motion for preliminary injunction. Accordingly, Easy Tree was served with the dispositive motions pleadings with very limited information redacted. Easy Tree participated in the oral argument and subsequently filed a submission.

*Analysis*

While we decline to assume that Griffy actually submitted the missing information, thus laying responsibility for its later absence squarely on the Army, we do not think the situation is much changed. When Griffy's proposal was evaluated, and the information was seen to be missing, there really were only two explanations. Either Griffy did not have any insurance contact and the omission was deliberate—possible, but highly improbable that a contractor without insurance would submit a proposal; or the omission was inadvertent. And if it was inadvertent, it was because of a clerical error either by Griffy or by the Army. In either event, the Army had a duty to inquire further. Moreover, Griffy had regularly contracted through the Ft. Campbell contracting office and was presently performing another contract there. The missing information may have been readily available from the Army's own contract files. And a brief phone call

would have remedied the error, irrespective of responsibility.

■ To begin with, the absence of the point of contact information in and of itself clearly indicates a clerical mistake. We see from Easy Tree's proposal and Griffy's "lost material" that we are talking about a single sheet of paper containing the name of an insurance representative and a telephone number. The government's obligation as respects an apparent clerical error is clear—it has a duty to inquire. *Central Park v. United States*, 44 Fed.Cl. 737 (1999); *Connelly Containers, Inc. v. United States*, 7 Cl.Ct. 423 (1985).

The solicitation at issue was labeled a "negotiated" procurement, but in fact bidders were advised that there would be no negotiations or discussions. In character it was the same as a sealed bid procurement where there are no post-submission contacts with bidders. But even in the sealed bid procurement framework an exception to the no-contact rule is recognized for clarification of overt errors:

> In cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer shall request from the bidder a verification of the bid, calling attention to the suspected mistake.

48 C.F.R. § 14.406–1. The FAR makes this exception because of the great importance of one of the cornerstone policy goals underlying public procurement—insuring that the government attains the best contract possible and does not take advantage of obvious contractor errors. The FAR is not diverted from this goal by easily remedied clerical errors.

■ The duty of verification exists regardless of whether the solicitation is characterized as negotiated or sealed. One of the very purposes of negotiated procurement is to allow *offerors to correct deficiencies and errors.* John Cibinic, Jr. and Ralph C. Nash, Jr., *Formation of Government Contracts*, 710 (3rd ed.1998). Indeed, this is what the FAR means by "negotiated" in a "negotiated procurement":

> Negotiations are exchanges ... between the Government and offerors, that are undertaken with the intent of allowing the offeror to revise its proposal.

FAR § 15.306(d).

■ The Army, however, argues that the solicitation explicitly stated that it might make award without any discussion. At oral argument the Army also implied that if it sought to clarify the omission with Griffy, it would have to hold discussions with all bidders. This confuses the concepts of discussions and clarifications. The clarification of a clerical error applies as well in a negotiated procurement. " 'Clarifications' are limited exchanges between the government and offerors that may occur when award without discussions is contemplated." *Charleston Marine Containers, Inc.*, 1999 WL 1015568 at *4. The type of discussion the solicitation refers to and which might require dialogue with all the bidders is a different aspect of negotiated procurement, bargaining, which is also defined by FAR § 15.306(d):

> These negotiations may include bargaining. Bargaining includes persuasion, alteration of assumptions and positions, give-and-take, and may apply to price, schedule, technical requirements, type of contract or other terms of a proposed contract. *When negotiations are conducted* in a competitive acquisition, they take place after establishment of the competitive range and *are called discussions.* (Emphasis added)

■ We do not question the Army's decision not to negotiate this contract. In effect, they treated it as a sealed bid, no bidder contact solicitation. But the policy of FAR 14.406–1, if not its strict wording, applies. The Army cannot avoid its obligation merely by renaming an apple as an orange.

The duty of inquiry has been recognized in cases where the contractor seeks to have the contract reformed based on clear mistake. *Dakota Tribal Industries*, 34 Fed.Cl. 593, 596 (1995) (where there is an indication of mistake the government must verify bid, calling attention to possible mistake); *United States v. Hamilton Enterprises, Inc.*, 711 F.2d 1038, 1046 (Fed.Cir.1983) (government must do more than simply seek confirmation of a bid; it must specifically advise bidders of

apparent errors). The policy is designed to prevent the government from overreaching by awarding a contract where it knows the contractor has made a significant mistake. *Ruggiero v. United States,* 190 Ct.Cl. 327, 335, 420 F.2d 709 (1970). The inverse is also important—the government should not be deprived of the best possible contract because of a contractor's clerical error.

Our conclusion is reinforced by the Army's past contract history with Griffy. This should have alerted the Army that the missing name and number was quite probably due to oversight or clerical error. Griffy had performed at least two previous landscaping and mowing services contracts for the Army at Ft. Campbell. One of the contracts was performed in 1998. The other contract began in 1998 and was still in effect when this contract was solicited and awarded. For all we know, there might have been Griffy trucks regularly parked outside the window of the Ft. Campbell contracting office.

Moreover, it is evident from the administrative record that persons in the Ft. Campbell contracting office who evaluated the bids on this solicitation were also involved in half of the prior contracts Griffy had in the past. Of the 13 past and present contract's which Griffy referenced in its bid proposal, the contracting officer for this solicitation, Roy Murray, was the contact person for four; and Joseph Whitfield, one of Griffy's evaluators for this solicitation, was contact person for two others.

It is, of course, possible that Griffy no longer had insurance, or that its rating changed since its previous contracts, but this past history supports our belief that there was duty to inquire. *Consolidated Engineering Services, Inc.,* B–279565.2, 99–1 CPD ¶ 75 (1998) (agency may not ignore prior performance information of which it is aware); *GTS Duratek, Inc.,* B–280511.2, 98–2 CPD ¶ 130 (1998) (protest sustained where agency improperly ignored relevant information that was known to the agency's evaluators). After all, the goal of negotiated procurement is to "ensure that the Government, when contracting by negotiation, receives the best value, while ensuring the fair treatment

of offerors." 62 Fed.Reg. 51224 (September 30, 1997).

Finally, there is always the possibility that the Army itself was responsible for losing the paper with the point of contact name and phone number. The Army cannot ignore its own mistakes to the prejudice of a contractor. We believe this reinforces the Army's duty of inquiry.

The government cites *Charleston Marine Containers, Inc.,* 1999 WL 1015568 (C.G. November 8, 1999), and *Dylantic, Inc.,* B–261,-886, 95–2 CPD ¶ 197 (October 30, 1995), for the proposition that the clarification process may not be used to cure deficiencies or material omissions. We agree. In these cases, the contractors both failed to submit important information and submitted incorrect or non-responsive information. There was no indication this was due to a clerical error. There is a world of difference between material deficiencies and a lost name and number.

The government also cites *P & R Roofing & Sheet Metal, Inc.,* B–258,388, 94–2 CPD ¶ 254 (December 20, 1994), and *Vereinigte Geb.,* B–252546, 93–1 CPD ¶ 454 (June 11, 1993). These cases seem to state that where an agency loses or misplaces a bidder's information, the bidder does not prevail. The reasoning is that the bidder may not subsequently submit an alleged copy of the missing information because "the award of a contract on the basis of self-serving statements as to the contents of the bid package initially submitted would not be consistent with the maintenance of the competitive system." *P & R Roofing* at ¶ 254.

The facts of these cases are very different from our own. In *Vereinigte Geb.,* the protestor was present at the bid opening and knew the amount of the low bid. Then it was discovered that its proposal was entirely missing. The protestor reconstructed its missing proposal, an expedient rejected by the GAO. To allow this after the other bids had been opened and announced would, indeed, jeopardize the integrity of the procurement process.

*P & R Roofing* concerned a missing Certificate of Procurement Integrity, a document designated as a material requirement in the

solicitation. This certificate constitutes legal commitments by the signatory, and is a special document. See FAR § 52.203–8. A former FAR provision, 14.404–2(m), explicitly stated that proposals without a certificate must be rejected. The significance of this certificate warrants special consideration which might well outweigh an agency's responsibility to safeguard a bid package. A point of contact hardly rises to such exalted dignity.

We would find it bizarre to conclude that the Army has an obligation to clarify a bidder's clerical error, but not its own. Such a policy endorses official negligence. We see no reason to do so when the missing information is as prosaic and self-authenticating as a name and phone number. The integrity of the procurement process is enhanced, not harmed.

The government's obligation is clear and simple. If it suspects a clerical error, it must ask. We therefore find that the Army's failure to inquire under these circumstances is arbitrary and capricious and a violation of 5 U.S.C. § 706.

*Prejudice*

■ In order to prevail in its protest, Griffy must show that but for the Army's error, there was a substantial chance it would have received the contract. *Alfa Laval Separation Inc. v. United States,* 175 F.3d 1365 (Fed.Cir.1999). Griffy says that its insurance rating was good enough to warrant receiving the maximum 20 EMF points, putting it one point ahead of Easy Tree. But Griffy does not need to score that high. Given that this was a best-value procurement and given Griffy's substantially lower price, any points more than zero increase the chances of Griffy's winning the contract.

Easy Tree counters that tree trimming requires expertise and knowledge which Griffy does not have; Easy Tree in fact argues that Griffy's lower price is indicative of its lack of knowledge of the work entailed. In this, Easy Tree challenges the Army's decision to award Griffy the full 30 points for similarity of past work. While Easy Tree may be correct, its argument is misdirected. It is not for us to evaluate the proposals.

Finally, since Griffy is seeking injunctive relief, it must show that it will suffer irreparable injury; that its harm outweighs that to the government and to third parties; and that the granting of an injunction serves the public interest. *ES–KO, Inc. v. United States,* 44 Fed.Cl. 429, 432 (1999). As is common in these cases, the injury Griffy would suffer is unfortunately balanced by the injury. Easy Tree will suffer for losing its apparent award. But the public interest in preserving the fairness and integrity of the government's procurement system is paramount. *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970).

*CONCLUSION*

For these reasons, we grant plaintiff's motion for summary judgment and deny the government's motion for judgment on the record. We vacate the award and direct the Army to re-evaluate Griffy's proposal consistent with this opinion, and make a new award.

The Court is aware that a proposal by a third party also lacked insurance point of contact information. If appropriate, that proposal should also be re-evaluated consistent with this opinion.

Plaintiff is awarded its costs.

IT IS SO ORDERED.