**INTERNATIONAL GRAPHICS, DIVISION OF MOORE BUSINESS FORMS, INC., Plaintiff,**

**and**

**Jeffries Banknote Company, Intervenor,**

v.

**The UNITED STATES, Defendant.**

**No. 586–83C.**

United States Claims Court.

Feb. 8, 1984.

Robert D. Wallick, Washington, D.C., Atty. of Record, for plaintiff. Steptoe & Johnson, Washington, D.C., of counsel.

William Dickey, Washington, D.C., Atty. of Record, for intervenor.

Stephen Bergenholtz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Williard, Washington, D.C., for defendant.

### OPINION ON MOTIONS FOR SUMMARY JUDGMENT AND EQUITABLE RELIEF

REGINALD W. GIBSON, Judge:

This is a pre-award bid protest case filed in this court by plaintiff, International Graphics, Division of Moore Business Forms, Inc., and subsequently joined in by intervenor, Jeffries Banknote Company. Declaratory and other equitable relief is sought respecting a solicitation (IFB) issued by the Government Printing Office (GPO) under Program 114–S relating to the procurement requirements of the Commerce Business Daily (CBD).

The issues presently before the court stem from Intervenor's Motion for Summary Judgment filed on January 16, 1984, and Plaintiff's Motion for Equitable Or Declaratory Relief Extending The Time for Award and/or Accepting Bids filed on January 24, 1984. The latter motion, in effect, is plaintiff's opposition to intervenor's motion. Defendant filed responses supportive of intervenor's motion on January 17, 1984, and in opposition to plaintiff's motion on January 30, 1984.

Oral argument was heard on the foregoing motions on January 31, 1984. After considering said pleadings, the arguments of the respective parties, and available authorities on the issues raised, this court is constrained, for the reasons hereinafter delineated, to deny both intervenor's motion for summary judgment and plaintiff's motion for equitable or declaratory relief.

### Background

Subject solicitation was issued by the GPO on February 24, 1982, for the publication of the CBD, a daily publication issued by the Department of Commerce. For the past 33 years, the GPO has printed this publication. One of the expressed purposes of the solicitation was to make a comparative feasibility study of in-house costs versus private bidders' costs to ascertain whether it is more economical to retain the production in-house or to out-source the publication of the CBD.

Bids were received from six bidders, including defendant itself, on September 15, 1983, and opened on September 16, 1983. Three of these bids were deemed non-re-

sponsive, leaving the bids of plaintiff, defendant, and intervenor eligible for award. Plaintiff and defendant submitted GPO Form 910 with their bids, which contained a standard provision stating in pertinent part that "the undersigned agrees, if this bid is accepted within _____ calendar days (60 calendar days unless a different period is inserted by the offeror) from the date for receipt of bids specified herein, to furnish any or all items upon which prices are offered . . . ." Neither plaintiff nor defendant inserted a different period for bid acceptance in the blank space provided. Intervenor did not submit Form 910, and the court is aware of no other document, contained in intervenor's bid or otherwise, which limits the period during which intervenor is bound to perform under the contract if its bid is accepted.[1]

Shortly after bid opening, on September 22, 1983, plaintiff filed its application for a temporary restraining order and other appropriate equitable relief.[2] Intervenor filed its motion to intervene on September 29, 1983. Before a hearing could be held on the motion for preliminary injunction by plaintiff against awarding of the contract (which hearing was then scheduled for October 7, 1983), defendant abruptly cancelled the solicitation on October 3, 1983. Following said cancellation, plaintiff and intervenor filed a barrage of new motions seeking additional declaratory relief and also to enjoin, *inter alia,* said cancellation of the solicitation.[3] On October 7, 1983, this court granted the parties' motion(s) for equitable relief and issued a preliminary injunction restraining defendant from awarding or cancelling the solicitation under Program 114–S.[4]

Additionally, in an extensive opinion issued on December 23, 1983, 4 Cl.Ct. 186, this court also denied defendant's motions to dismiss and for summary judgment filed on October 3 and 20, 1983; the latter was denied for the reason that a genuine issue of material fact exists respecting the question whether a compelling reason obtained for the cancellation of the solicitation. This issue is presently scheduled for trial on February 27, 1984.

*Intervenor's Motion For Summary Judgment:*

Pursuant to Rule 56(a), intervenor moves this court for summary judgment declaring that:

(i) the bids of plaintiff and intervenor have expired;

(ii) more than 60 days have elapsed following the expiration without either party having made efforts to extend or renew their bids, and that the interest of the competitive bidding system would not be served by permitting either party to renew its bid;

(iii) the parties (bidders) shall submit new bids as part of Step II, or alternatively;

(iv) the solicitation be terminated; or

(v) if the court deems that bid renewals should be permitted, both parties be given equal opportunity for equivalent renewals.

*Plaintifrf's Motion for Equitable or Declaratory Relief:*

While not styled as such, plaintiff, in effect, filed a cross-motion for a summary declaratory judgment respecting the "bid

---

1. Plaintiff contends in its Motion for Summary Declaratory Judgment, filed October 25, 1983, that intervenor's bid was non-responsive because, *inter alia,* intervenor "could decide after opening not to accept award." The court reserves judgment on the correctness of this contention until it disposes of said motion, which is currently pending.

2. Plaintiff's motion for a TRO was denied that day, for appropriate reasons, as moot.

3. As of this opinion, approximately 24 motions have been filed in this case, exclusive of the

multiple oppositions and responses with respect to same.

4. Prior to the cancellation of the solicitation, intervenor sided with defendant on the award issue; however, following the cancellation it sided with plaintiff that defendant had no rational justification for cancelling the solicitation. For purposes of its summary judgment motion presently before the court, intervenor now apparently sides with defendant, as will appear hereinafter.

acceptance period," coupled with a supporting motion for a preliminary and permanent injunction. In short, plaintiff's summary judgment motion prays for an order declaring that the private bidders waived and/or constructively extended the "bid acceptance period" by instituting and prosecuting this litigation, *supra;* and that the "bid acceptance period" should by such "tolling" be extended for a 60-day period from and after entry of final judgment in this action.

In its concomitant motion for a preliminary and permanent injunction, plaintiff seeks an appropriate order enjoining defendant from taking an inconsistent position with the requested declaratory relief, *supra.*[5]

### Discussion

#### I.

Intervenor stressed at oral argument that the primary form of relief it seeks by its present motion is a rebidding of Part II of subject procurement. Such relief, if granted, would, of course, be tantamount to a cancellation and resolicitation because it requires the GPO to discard those bids that were submitted and permit the three parties in this case to rebid, with full knowledge of the bids of their competitors. In this connection, the following principles governing cancellation of solicitations, as set forth by the predecessor Court of Claims, are instructive:

> To make the system work without undue delays and without the opening of the bids being used unfairly to obtain a disclosure of what competitors are offering, it is necessary that the bids be firm bids, backed by a guaranteed willingness

to sign a contract at the bid price. To have a set of bids discarded after they are opened and each bidder has learned his competitor's price is a serious matter, and *it should not be permitted except for cogent reasons.* (Emphasis added.)

*Massman v. United States,* 102 Ct.Cl. 699, 718–19, 60 F.Supp. 635 (1945), *quoted in International Graphics v. United States,* 4 Cl.Ct. at 194 (1983). The same policies and standards are to be found in the regulations governing cancellation of solicitations by the GPO and other government agencies. *See* GPO Printing Procurement Regulations, § IV.2 (1980); 41 C.F.R. § 1–2.404–1(a) (1983); 32 C.F.R. § 2–404.1(a) (1983). Because the same negative consequences essentially follow from a rebidding as from a cancellation after bid opening, this court will embrace the standard governing the latter as applicable to a determination as to whether to grant the former.

Intervenor therefore should only be entitled to a rebidding if it can persuasively establish cogent or compelling reasons for such a procedure. Its position appears to be that the expiration of the 60-day bid acceptance period, *ipso facto,* constitutes such a compelling reason. Intervenor's primary reason for asserting this position is that a "basic inequity" exists in subject procurement as a result of the government being "bound to proceed,"[6] while the private bidders have the option to accept an award or not, after the 60-day period has expired.[7] Permitting private bidders the option to choose whether to accept an award after the 60-day period expires would in intervenor's view give such bidders "two bites of the apple," a consequence it states is to be

---

**5.** Defendant's responses to intervenor's and plaintiff's motions state the government's general agreement with the contentions of intervenor. Additionally, in its response to plaintiff's motion, defendant also contends that this court lacks jurisdiction to grant the relief plaintiff seeks. Because we view this latter contention as directed towards the ultimate remedy sought by plaintiff in this case, rather than the remedy sought by either plaintiff's or intervenor's motions presently before the court, we decline to pass upon said contention at this time.

**6.** Although intervenor does not specify why the government "seems bound to proceed," this contention appears to stem either from the fact that the GPO is presently enjoined from cancelling the solicitation, or from the provision in the GPO regulations, *supra,* preventing cancellation after bid opening without a compelling reason.

**7.** This is an open question as to intervenor because its bid did not contain a 60-day bid acceptance period or any other expressed acceptance limitation.

avoided whenever possible in procurement law.[8]

While it is apparent that under the bid expiration terms of this solicitation, the parties are subject to differing obligations, such a circumstance under the present facts does not *ipso facto* create a "basic inequity" against the government. As the parties readily admitted at oral argument, the primary purpose for the inclusion of a 60-day acceptance time limitation in bids is for the protection of bidders. Without such a limitation, bidders might be bound to accept a contract for a given price long after conditions had changed that would render performance impossible at that price. The 60-day (or any) time limitation is also not devoid of benefits to the government, insofar as it assures contracting officers that the awardee is legally bound to accept if the award is made within the stipulated period. The court therefore does not see how the government is prejudiced by a system that provides the foregoing bilateral benefits, even if the government is obliged to proceed unless it has a compelling reason for cancellation. Intervenor has not supported its motion with any statutory or regulatory citations or apposite case law, and the court has failed to find any that are directly on point. However, in this connection, the Comptroller General has stated in a case with similar facts that:

> ... since the only right which is conferred by *expiration* of the acceptance period is conferred upon the bidder, it follows that the bidder may waive such right if, following expiration of the acceptance period, he is still willing to accept an award on the basis of the bid as submitted. (Emphasis added.)

46 Comp.Gen. 371, 372–73 (1966); *accord, Government Contractors, Inc.,* B–193548, Feb. 26, 1979.

It is also instructive to note that two Federal Procurement Regulations show that as a matter of general procurement policy, where the expiration of the bid acceptance period is imminent, the contracting officers *should* request the several lowest bidders to extend their bids, if they are aware of difficulties, such as a bid protest, that would delay award beyond this period. *See* 41 C.F.R. § 1–2.404–1(c); 41 C.F.R. § 1–2.407–8(b)(2) (1983). Neither of these regulations is binding on the GPO, however. *International Graphics,* at 195. Significantly, nowhere in the GPO's regulations or applicable statutes is it stated, or even suggested, that if the bid acceptance period expires and the contracting officer does not timely request an extension, a rebidding should take place or the solicitation should be cancelled. Additionally, it is nowhere stated that the bid acceptance period expires in spite of the institution of litigation, prior to the expiration of said period, which extends beyond such period.

It appears that the only known decisions pertinent, although *contra,* to intervenor's contentions to date have been rendered by the General Accounting Office (GAO). Although it is well settled that decisions of the GAO are not binding on this court (*see International Graphics,* at 199), we believe that its decisions pertaining to expiration of the bid acceptance period are soundly reasoned, and therefore choose to follow them. Premised on either of two theories espoused by the GAO (*i.e.,* "waiver" and/or "tolling"), and, contrary to the contention of intervenor, this court believes that the bids submitted by the parties to this litigation have not expired.

First, the GAO has consistently accepted the theory that the government should not be prevented from accepting a bid, once expired, that has subsequently been revived through an actual or constructive waiver by a bidder. *Mission Van & Storage Co., Inc.,* 54 Comp.Gen. 775, 778–79. Such a waiver will be deemed to have occurred if, following expiration of the acceptance period, the bidder is still willing to accept an award on the basis of the bid as originally submitted.

---

**8.** Intervenor thus appears to have placed itself in the peculiar position of claiming that an "inequity" exists to the prejudice of the government and to the benefit of plaintiff and itself, and therefore seeks redress to the benefit of the government and ostensibly to its own detriment.

*Cecile Industries, Inc.,* B–207277.3, 82–2 CPD 299 (September 30, 1982); *Surplus Tire Sales,* 53 Comp.Gen. 737, 738 (1974). As long as the waiver has not compromised the integrity of the competitive bidding system and there is no demonstrated prejudice to other bidders, the GAO has permitted the waiving bidder to accept an award. *Government Contractors, Inc.,* B–193548; 46 Comp.Gen. at 374.

■ It is clear that in the instant case, plaintiff and intervenor waived their right to refuse to accept award after expiration of the 60-day bid acceptance period. This is manifest from their expressed statements at the January 31, 1984 hearing that they presently wished to extend the acceptance term of their bids. It is patently clear from the foregoing discussion pertaining to intervenor's claim of "inequity" that waiver of the 60-day period (or intervenor's bid acceptance period), on the facts here, would not compromise the integrity of the competitive bidding system. Moreover, intervenor has not even attempted to show that any other bidders would be prejudiced by an extension of the bid acceptance period. In view thereof, plaintiff and intervenor must be deemed to have made a valid waiver of the respective expiration dates of their bids.[9]

A second theory generally accepted by the GAO is that a party's active participation in a bid protest, even without a formal extension of the bid acceptance period, tolls that period until the final disposition of the protest. *S.J. Groves & Sons Company,* B–207172, November 9, 1982, 82–2 CPD 423; *Secretary of the Navy,* 52 Comp.Gen. 863, 864 (1973); *Mission Van & Storage Co., Inc.,* 53 Comp.Gen. at 779 (1974). Because bid protests are often sufficiently protracted so as to prevent their resolution until after the bid acceptance period has expired,

this "tolling" rule is necessary if the system of bid protests is to retain any meaning. *See* B–154236, June 26, 1964. Although, as intervenor contends, the Comptroller General has not applied an absolute tolling rule in all circumstances, the only exception to the foregoing general rule has been applied when the protestors have placed the agency on notice that they no longer wish to extend the term of their bids. *S.J. Groves,* 82–2 CPD 423; *Secretary of the Navy,* 52 Comp.Gen. at 864.

■ In the instant case, both plaintiff and intervenor clearly have taken a continuously active role as protestors of defendant's actions on the implied contract. Moreover, neither party has placed defendant on notice that it did not wish to extend the term of its bid, as is evident from the parties' statements to the contrary during the hearing on January 31, 1984. Hence, the foregoing facts and circumstances compel no rational conclusion other than that the bid expiration period has been "tolled" by the affirmative actions of plaintiff and intervenor.

Although the court believes that both the "tolling" and "waiver" theories justify permitting the present bids to stand, it is important to note that the first theory only constitutes a subcategory of the second. In other words, the institution of litigation is only one of several forms of conduct by which the waiver of a bid acceptance period can be accomplished. Accordingly, the meaning of "tolling" here should be distinguished from the meaning of the term in other contexts, such as the statute of limitations. If the latter meaning were ascribed to "tolling" in both situations, it would appear that only those days that had elapsed before the protest was registered would be deducted from the 60 days of the stipulated acceptance period. The remain-

---

9. In accordance with the general principles of contract law, the court believes that whereas here, no specific provision is included in an offer (*i.e.,* intervenor's bid) which limits the time period in which the offer remains open, the offer shall be construed to be open for a reasonable period. *See* Restatement of Contracts (Second) § 41 (1981); ·J. Calamari and J.

Perillo, *Contracts* 56 (1970). In intervenor's case, it is sufficient to hold that a "reasonable" period for acceptance of its bid is obviously in excess of 14 days, the interval between the time of receipt of the bids and the time the period was tolled by intervenor's entry into this lawsuit.

der of the period would then begin to run only after final disposition of the bid protest, which if appeals are made could conceivably occur a year or more after bids are received. Under such an interpretation, bidders would be bound to accept an award if made during the "new" acceptance period, and could thus face considerable economic hardships, such as uncompensated additional costs, not anticipated at the time of submission of bids. Such a result does not appear consistent with the purpose of the 60-day bid acceptance provisions.

■ The court therefore views the "waiver" theory as the more rational and definitive theory that should establish the extended time of the bid acceptance period. We hold, therefore, on these facts, that the bid acceptance period shall remain open as long as the parties, through litigation or otherwise, have actually or constructively expressed their intent to accept the award under Program 114–S. For the foregoing reasons, the court cannot grant plaintiff's request for a declaratory judgment that "the time for award and/or acceptance of bids ... is extended until 60 days after entry of final judgment ... or ... such other date as is established by the Court."

## II.

■ Intervenor has expressed an alternative preference for relief, if his prayer for a rebidding is denied, in the form of cancellation of subject solicitation. It is clear from the GPO Printing Procurement Regulations, *supra,* that the government cannot cancel a solicitation without a compelling reason, and, given such, this court should require no less justification for an order to that effect. It is also apparent from the discussion, *supra,* that the passing of more than 60 days since the receipt of bids does not, in the circumstances of the instant case, rise to the level of a compelling reason that would mandate cancellation of subject solicitation. This is particularly true when it is considered that cancellation of subject solicitation has been preliminarily enjoined by this court since October 7, 1983. Intervenor's argument appears to suggest, as

plaintiff contends, that this court's order of October 7 could be nullified by the government's simply neglecting to request an extension of the bid acceptance period. The court finds such an argument untenable, simply because it would effectively undermine the entire purpose of a preliminary injunction—to preserve the status quo until the court can decide the case on the merits. *See Washington Metropolitan Area Transit Commission v. Holiday Tours,* 559 F.2d 841, 844 (D.C.Cir.1977).

## III.

■ Intervenor's third request for relief essentially appears to ask that in the event bid renewals are allowed, a declaratory judgment be issued, stating that both plaintiff and intervenor must "be given equal opportunities [by defendant] for equivalent renewals." The jurisdictional ground for this request is presumably 28 U.S.C. § 1491(a)(3), which permits this court "to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, ...." This court's jurisdiction to enter such declaratory and equitable relief was intended to be exercised "only in truly extraordinary circumstances, ...." H.R. Rep. No. 312, 97th Cong., 1st Sess. 44 (1981); *CACI, Inc.—Federal v. United States,* 719 F.2d 1567, 1581 (Fed.Cir.1983). Because the court has ruled herein that the expiration of the bid acceptance periods for plaintiff and intervenor has been waived, no sufficiently extraordinary circumstances have obtained in the instant case to warrant a declaratory judgment that would have essentially the same effect.

Moreover, it is particularly significant to note here that defendant has given no indication whatsoever that plaintiff and intervenor would *not* be given equal opportunities for equivalent renewals of their bids. The long-established standard governing the issuance of declaratory judgments is "Whether the facts alleged, under all the circumstances, show that there is a *substantial controversy,* between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a

**522**

declaratory judgment." *Maryland Casualty Co. v. Pacific Coal and Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (emphasis added). Because the circumstances of this case indicate that intervenor's claim is based on nothing more than "fear, speculation or concern over a possible challenge to a party" (*see Grove Press, Inc. v. Blackwell,* 308 F.Supp. 361, 375 (E.D. Mich.1969)), rather than a substantial controversy with defendant, intervenor cannot be granted the declaratory relief it seeks.

Similar considerations, *supra,* dictate that plaintiff's remaining claims for declaratory relief be denied. Its request that the court enter an order declaring that the parties waived or extended their bids appears in substance to be no more than an opposition to intervenor's motion for summary judgment, which is herein being denied for the reasons previously stated, including plaintiff's. Additionally, plaintiff's alternative request that the bid acceptance period be deemed extended until a date agreed to by the parties in writing need not be granted because the bid acceptance period can be extended by a unilateral waiver by the respective bidders.

The injunctive relief sought by plaintiff appears equally unnecessary to this court. For the reasons discussed, *supra,* if plaintiff can carry its burden and prevail on the merits in this action and subject solicitation is formally restored, the GPO would be violating its own regulations if it then cancelled the solicitation solely on the ground that the bid acceptance period had expired. Because defendant has not indicated any intent to violate its own regulations in the manner suggested by plaintiff, there has been no showing of imminent irreparable harm to plaintiff. "Injunctions ... will not issue to prevent injuries neither extant nor presently threatened, but only merely 'feared'." *Exxon Corp. v. Federal Trade Commission,* 589 F.2d 582, 594 (D.C.Cir. 1978); *citing Connecticut v. Massachusetts,* 282 U.S. 660, 51 S.Ct. 286, 75 L.Ed. 602 (1931).

Accordingly, IT IS HEREBY ORDERED that intervenor's and plaintiff's motions for summary judgment and equitable relief, respectively, are DENIED.