CAMDEN SHIPPING CORPORATION,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 09–600 C.

United States Court of Federal Claims.

Oct. 15, 2009.

Isaias Alba, IV, PilieroMazza PLLC, Washington, D.C., for plaintiff. Pamela J. Mazza, Steven J. Koprince, Kelly A. DiGrado, PilieroMazza PLLC, Washington, D.C., of counsel.

John H. Roberson, Trial Attorney, Martin F. Hockey, Jr., Assistant Director, Jeanne E. Davidson, Director, Tony West, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Michelle L. Salter, Assistant Counsel, Military Sealift Command, Washington, D.C., of counsel.

1. The Court's recitation of facts is based on Camden's complaint and the documents it attaches thereto. For the purposes of this motion, the Court will assume the truth of Camden's well-pled allegations. *See Kawa v. United States*, 77 Fed.Cl. 294, 298 (2007).

*OPINION AND ORDER*

GEORGE W. MILLER, Judge.

Camden Shipping Corporation ("Camden") brings this pre-award protest contesting the Military Sealift Command's ("MSC's") finding it ineligible for a contract to operate ships. Camden argues that MSC improperly removed it from consideration for award after MSC concluded that Camden's offer had expired. MSC moves to dismiss Camden's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), arguing that (1) Camden does not have standing to pursue this bid protest, and (2) Camden has failed to state a claim for relief. For the reasons stated below, MSC's motion is **GRANTED.**

## I. Background[1]

In November 2008, MSC, a part of the Department of the Navy, issued a Request for Proposals ("RFP") seeking to award up to three contracts to operate Large Medium Speed Roll–On/Roll–Off ships.[2] Compl. ¶ 4 (docket entry 1, Sept. 11, 2009); *id.* Ex. A, at ¶ 1.1.1 & § M–1.

The original RFP contained contradictory information regarding how long offerors had to keep their offers open. *Id.* Ex. C, at ¶ 7. In one paragraph, K–9, the RFP required the offeror to be bound "if this offer is accepted *within 120 calendar days*" from the date offers were due. *Id.* Ex. C (emphasis added). In another paragraph, however, the RFP stated that "[o]ffers ... shall remain firm for a period of *at least 180 days.*" *Id.* Ex. C, at ¶ L–15(g) (emphasis added). And in yet a third location, the "Notice to Offerors," the RFP stated that "[o]fferors shall have offers valid for *at least 210 days.*" *Id.* Ex. C (emphasis added). Before the offers were due, MSC issued Amendment 0002, which amended both paragraphs K–9 and L–

2. The solicitation was separated into three lots: Lot 1, which included seven Bob Hope Class ships; Lot 2, which included two Gordon "G" Class ships; and Lot 3, which included two Shughart "S" Class ships. Compl. Ex. A, at ¶ 1.1.1. Camden's proposal related only to Lots 2 and 3. *See, e.g.,* Compl. Ex. D.

15(g) to require offerors to hold offers open for at least 210 days.[3]  *Id.* Ex. I, at Ex. 3.

On December 22, 2008, Camden submitted a timely proposal, including a cover sheet on Standard Form 33 ("SF33"), where it filled in "60" as the number of days the offer would remain open.  *Id.* ¶ 5–6 & Ex. B. Camden claims that this insertion of 60 days was an error, relying in part on the language of SF33 in "Box 12," which reads:

> In compliance with the above, the undersigned agrees, if this offer is accepted within ____ calendar days (*60 calendar days unless a different period is inserted by the offeror*) from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule.

*Id.* ¶ 6 & Ex. B.

Whether or not Camden wrote "60" in this blank erroneously, MSC believed that Camden's offer expired sixty days from the date Camden submitted it, that is, on February 20, 2009.  Over one hundred days later, on June 1, 2009, Camden e-mailed the Contracting Officer ("CO") to inquire into the status of its proposal.  *Id.* ¶ 8 & Ex. D. The CO replied on the same day, observing that Camden's SF33 had indicated 60 days as the duration of the offer, and that MSC had requested offers to remain valid for 210 days. The email concluded that "[i]n consideration of this fact, I regret to inform you that the offers submitted by Camden for Lot 2 and Lot 3 under subject solicitation expired on February 20, 2009 and can no longer be considered for award."  *Id.* Ex. D.

Camden repeatedly informed MSC that it stood by its original offer, telephoning on the date it received the CO's e-mail, and later writing a letter to the same effect.  *Id.* ¶¶ 10–12 & Ex. E. MSC did not respond.  *Id.* ¶ 12.  Camden then filed an agency-level protest, which MSC denied, stating that "[t]o allow Camden to revive its bid would provide Camden with an unfair advantage over the other offerors who complied with the solicitation requirements and accepted the risk of the marketplace for the full acceptance period."  *Id.* ¶¶ 13–14 & Exs. F, G. Next, Camden filed a protest with the GAO. GAO Case No. B–401526; Compl. ¶ 15 & Ex. H. MSC moved for summary dismissal, arguing that Camden was not an "interested party" within the meaning of 31 U.S.C. § 3551(2)(A) because its offer had expired and Camden therefore lacked standing to pursue a GAO protest.  Compl. ¶ 16 & Ex. I.

On July 2, 2009, Camden learned that three days earlier MSC had issued another amendment to the RFP, Amendment 0012, asking all remaining offerors to extend their offers an additional 150 days, for a total of 360 days, to December 13, 2009.  *Id.* ¶ 18 & Ex. K. Camden sent an unsolicited response purporting to unconditionally extend its offer for 360 days, that is, until December 17, 2009.  *Id.* ¶ 19 & Ex. L. Camden also amended its GAO protest to reflect that MSC had issued the amendment and that Camden had attempted to unconditionally extend its offer.  *Id.* ¶ 20 & Ex. M.

The GAO dismissed Camden's protest for lack of standing on July 27, 2009.  *Id.* ¶ 21 & Ex. N. Like MSC, the GAO held that "[a]llowing an offeror with a shorter acceptance period to revive its offer after it has expired would afford the offeror an unfair advantage since its initial exposure to the risk of the marketplace was for a shorter period of time."  *Id.* Ex. N, at 3. GAO held that because Camden's offer had expired and could not be revived, Camden was not an "interest-

---

**3.** Camden does not refer to Amendment 0002 in the factual allegations in its complaint, but attaches a copy of its failed Government Accountability Office ("GAO") protest to its complaint, which in turn attaches a copy of Amendment 0002. Compl. Ex. I, at Ex. 3. Because this document is attached to Camden's complaint, and because Camden's claims depend on interpretation of this specific term of the solicitation, the Court properly considers it on a motion to dismiss. RCFC 10(c); *see Pennington Seed, Inc.*

*v. Produce Exch. No. 299*, 457 F.3d 1334, 1342 n. 4 (Fed.Cir.2006). Additionally, Exhibit B, also attached to the complaint, contains a specific acknowledgment that Camden received Amendment 0002. Compl. Ex. B, at Box 14. Finally, Camden relies on Amendment 0002 and its acceptance of this amendment in its opposition to MSC's motion to dismiss. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp.") at 10 (docket entry 15, Sept. 25, 2009).

ed party" and did not have standing to pursue a bid protest. *Id.* Ex. N, at 4.

Camden filed its complaint in this court on September 11, 2009, which MSC moved to dismiss on September 18, 2009. Defendant's Motion to Dismiss ("Def.'s Mot.") (docket entry 10, Sept. 18, 2009). The Court heard oral argument on October 7, 2009.

## II. Standard of Review

### A. *RCFC 12(b)(1) and Standing*

■ If the defendant challenges plaintiff's standing to bring a claim, the motion is properly considered one challenging the court's subject matter jurisdiction. *Scott v. United States,* 78 Fed.Cl. 151, 153 (2007). The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub.L. 104–320, 110 Stat. 3870 (Oct. 19, 1996), grants this Court jurisdiction over pre-award bid protest actions brought by an "interested party." 28 U.S.C. § 1491(b)(1).

■ The Federal Circuit has held that the term "interested party" should be interpreted as defined in the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3551(2)(A). *Am. Fed'n of Gov't Employees, AFL–CIO v. United States,* 258 F.3d 1294, 1302 (Fed.Cir.), *cert. denied,* 534 U.S. 1113, 122 S.Ct. 920, 151 L.Ed.2d 885 (2002). Under CICA, an "interested party" is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A). Thus, to qualify as an interested party, a protestor must establish that "(1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement." *Distributed Solutions, Inc. v. United States,* 539 F.3d 1340, 1344 (Fed.Cir.2008). The "direct economic interest" prong of the standing inquiry tests whether the party was prejudiced by the alleged error. *Weeks Marine, Inc. v. United States,* 575 F.3d 1352, 1359 (Fed.Cir.2009). In a pre-award bid protest, to demonstrate prejudice, the plaintiff must allege "a non-trivial competitive injury which can be redressed by judicial relief." *Id.* at 1361–62.

### B. *RCFC 12(b)(6)*

Dismissal of a complaint is appropriate under RCFC 12(b)(6) "when the plaintiff can prove no set of facts that would warrant the requested relief, when drawing all well-pleaded factual inferences in favor of the complainant." *Levine v. United States,* 453 F.3d 1348, 1350 (Fed.Cir.2006). If the facts alleged reveal any possible basis on which the plaintiff might prevail, the court must deny the motion. *See Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir.2001). Plaintiff must, however, do more than recite the elements of a cause of action; it must make sufficient factual allegations to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that "the plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955); *see also St. Bernard Parish v. United States,* 88 Fed.Cl. 528, 556 (2009).

## III. Analysis

Camden raises three alternative claims: (1) that its proposal incorporated Amendment 0002 and thus remained open for the entire 210–day period; (2) that its proposal was ambiguous and MSC was required to clarify the duration of its offer; or (3) if its offer expired, it should have been permitted to revive its offer because the policy reasons for refusing revival do not apply here. The Court will address each argument in turn. As to the first two claims, if Camden successfully proved the facts alleged, it would have suffered a non-trivial injury resulting from a prejudicial error made by MSC, namely MSC's misreading its proposal and improperly deeming it expired. *Weeks Marine,* 575 F.3d at 1361–62. For this reason, Camden has standing to bring its first two claims.

*A. Camden's Offer Did Not Remain Open for 210 Days*

■ Camden argues that its offer must have been open for 210 days because Amendment 0002, issued to clarify the inconsistent acceptance periods, created a mandatory term that superceded the time period Camden entered in Box 12. For support, Camden points to FAR § 52.214–16, which states that if the agency includes a "Minimum Bid Acceptance Period" clause in the solicitation, it supercedes any language in the bid to the contrary. Pl.'s Opp. at 12.

There are two significant problems with this argument. First, Camden concedes that this FAR provision only applies in the Invitation for Bids ("IFB") context, which is governed by different rules and principles than RFPs. Thus, to the extent Camden relies directly on this provision, that argument must fail.

■ Secondly, in an IFB, if the bidder includes a shorter acceptance period than that required by the IFB, the bid must be rejected as non-responsive. *See Sundt Corp.*, 96–2 CPD ¶ 171, 1996 WL 637080, at *1 (Comp.Gen. Nov.5, 1996); *John P. Ingram, Jr. & Assocs., Inc.*, 93–1 CPD ¶ 117, 1993 WL 41176, at *2 (Comp.Gen. Feb.9, 1993). Thus, even if Camden could shoehorn itself into the regulation, the result would be that its offer would be rejected.

■ Camden argues that the RFP amendment stating that offers were to remain valid for 210 days "accomplishes the same purpose as FAR § 52.214–16." Pl.'s Opp. at 12. This statement is unsupported and unsupportable. Offering terms that vary from the requirements of an RFP does not render the offer non-responsive. *Dyonyx, L.P. v. United States*, 83 Fed.Cl. 460, 468 & n. 3 (2008); *see also Indus Tech., Inc.*, 2007 CPD ¶ 116, 2007 WL 1815471, at *5–6 (Comp.Gen. June 25, 2007) (holding that no ambiguity was created where RFP required the offerors to hold offers open for 350 days and the offeror expressly held the offer open for 180 days on

its SF33). Consequently, Camden was within its rights to hold its offer open for only 60 days.[4]

Because Amendment 0002 to the RFP did not supersede Camden's express representation that its offer was only valid for 60 days, Camden's offer did not remain valid for 210 days. Accepting the factual allegations as true, the complaint fails to state a claim for relief because it is "fatally flawed in [its] legal premises and destined to fail." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir. 1993).

*B. Camden's Offer Was Not Ambiguous and Did Not Require MSC to Seek Clarification*

Camden next argues that the appearance of "60" in Box 12 rendered its proposal ambiguous, triggering a duty by MSC to seek clarification. Pl.'s Opp. at 12. Camden again relies on IFB case law, and in that context, writing "60" would create an ambiguity because the solicitation requirements are mandatory. *See Sundt Corp.*, 1996 WL 637080, at *2 ("Although the acknowledged amendment specified a 120–day acceptance period, the bidder also inserted 90 days on SF 1442 for its bid acceptance period. Thus on its face the bid was ambiguous as to what acceptance period was being offered."). In the RFP context, however, because the parties are being invited to participate in a negotiated procurement, the offeror may propose terms that contradict the RFP in its offer and still be considered for award. *See Indus Tech., Inc.*, 2007 WL 1815471, at *5; FAR § 15.306; W. Noel Keyes, GOVERNMENT CONTRACTING UNDER THE FEDERAL ACQUISITION REGULATION § 15.3 (3d ed.2003). Camden's argument that its offer was on its face ambiguous fails because MSC issued an RFP, not an IFB, and there is no ambiguity of the type that creates a duty to inquire in this context.

---

4. Camden also argues that the use of the term "shall" rendered the amendment mandatory. Camden cites to *Statesman II Apartments, Inc. v. United States*, 66 Fed.Cl. 608, 616 (2005), but that case involved the court's interpretation of a HUD *contract* term, not an amendment to an RFP. Because Camden was permitted to vary the terms of its offer from the solicitation, MSC's use of the word "shall" is of no help to Camden.

After receipt of proposals, the Government may seek "clarifications" from offerors to resolve ambiguities or request additional information. FAR § 15.306(a). The agency may resolve minor or clerical errors. *Id.* There was, however, no ambiguity on the face of Camden's offer—it stated that it would be held open for sixty days. Thus, when the CO considered these offers, it was not error to decline to communicate with an offeror whose offer was no longer active. Such a communication would essentially be asking the offeror if it wished to amend the duration of its offer.

█ Camden argues that writing "60" was a "clerical error" and thus it ought to be allowed to correct the mistake. Analogizing to the doctrine of unilateral mistake, Camden relies on the notion that if the offeror made a mistake that "was clerical, mathematical, or [a] misreading of specification [, and] not an error in judgment" and if "the government knew, or should have known, that a mistake had been made" the parties are not bound to the terms of the contract. *Giesler v. United States,* 44 Fed.Cl. 737, 741 (1999), *rev'd on other grounds,* 232 F.3d 864 (Fed.Cir.2000). Under the unilateral mistake doctrine, however, the offeror's failure to conform to the requirements of the RFP because of a "clear error in business judgment" is not the type of error that warrants rescission. *Giesler,* 232 F.3d at 870–71.

█ Similarly, in analyzing a proposal the agency is required to seek clarification only in the case of a clerical error. *C.W. Over & Sons, Inc. v. United States,* 54 Fed.Cl. 514, 521 (2002); *MCS Mgmt., Inc. v. United States,* 48 Fed.Cl. 506, 515 (2001); *Griffy's Landscape Maint. LLC v. United States,* 46 Fed.Cl. 257 (2000). Camden relies on *Griffy's Landscape,* where an offeror left out mandatory insurance contact information in its offer for a contract with the Army. *Id.* at 258. The court held that in light of the offeror's prior history of contracting with the Army, "[t]his should have alerted the Army that the missing name and number were quite probably due to oversight or clerical

error."[5] *Id.* at 260. *Griffy,* however, is limited to clerical errors such as the omission of needed information. *C.W. Over & Sons,* 54 Fed.Cl. at 521; *MCS Mgmt., Inc.,* 48 Fed.Cl. at 515. The Government conceded at oral argument that if Camden had left Box 12 blank, MSC may have had a duty to inquire. Oral Argument Tr. at 49 (docket entry 19, Oct. 7, 2009).

But Camden did not leave Box 12 blank. It affirmatively represented that its offer was good for 60 days, and this statement did not appear to be a typographical error (*e.g.,* something like 2.10 days). "Plaintiff cannot claim that its error ... was clerical in nature." *C.W. Over & Sons,* 54 Fed.Cl. at 521. A "reasonably intelligent person acquainted with the contemporaneous circumstances" would conclude that Camden meant exactly what it said: it offered its price for 60 days. *Metric Constr., Inc. v. Nat'l Aeronautics & Space Admin.,* 169 F.3d 747, 752 (Fed.Cir. 1999); 1 Steven W. Feldman, Government Contract Award: Negotiation and Sealed Bidding § 7:24 (2009); *cf. Mesaros v. United States,* 845 F.2d 1576, 1581 (Fed.Cir.1988).

MSC takes no position on whether Camden mistakenly wrote "60" in Box 12, but instead disputes the legal significance of an offeror's subjective intent. Def.'s Mot. at 7 ("A fair and competitive solicitation process cannot be based upon allegations of subjective intent, contradicted, as here, by an offeror's express written representations."). In addressing this motion, the Court assumes the truth of Camden's assertion that it wrote "60" in Box 12 by mistake. But MSC is correct that Camden's subjective intent has no effect on the objective interpretation of the offer's terms. *Mesaros,* 845 F.2d at 1581. There was no reason for MSC to know that Camden's writing of "60" was unintentional, and MSC is not required to affirmatively contact an offeror in such circumstances. Camden's proposal was not ambiguous, MSC had no duty to inquire, and this argument fails under RCFC 12(b)(6).

---

5. Courts have questioned the continuing validity of *Griffy's* holding. *C.W. Over & Sons,* 54 Fed.Cl. at 521 n. 10; *MCS Mgmt.,* 48 Fed.Cl. at 515.

Because this case is distinguishable from *Griffy,* the Court finds it unnecessary to express a view on this conflict.

*C. Because Camden's Offer Was Not Revived, it Lacks Standing to Challenge MSC's Decision to Remove it from Consideration for Award on that Basis*

Camden's third claim, namely that its proposal was or ought to have been revived after it expired by its terms, presents different legal issues than its first two claims. To have an economic interest, and thus standing to make this claim, Camden must be able to demonstrate a "non-trivial competitive injury which can be redressed by judicial relief." *Weeks Marine*, 575 F.3d at 1361. The Court has found that Camden's offer unambiguously specified 60 days as the time for acceptance as a matter of law. Therefore, to determine whether Camden has standing to pursue its protest regarding revival of its offer, the Court must determine whether, under the facts alleged by Camden, and drawing all inferences in Camden's favor, Camden would be permitted to revive its offer.

If, under the facts as alleged, Camden would be entitled to revive its offer, then it would have a chance of remaining in the competition and would have a sufficient economic interest to be an "interested party" and to have standing. *See, e.g., Knowledge Connections, Inc. v. United States*, 76 Fed. Cl. 6, 14–15 (2007) (finding that an offeror had standing because it had effectively renewed its offer). On the other hand if, even accepting Camden's allegations as true, Camden is not entitled to revive its offer, then Camden is no longer an offeror, is not an "interested party," and lacks standing. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1381 (Fed.Cir.2009); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed.Cir. 2001) ("*Impresa*"); *Co–Mate Constr. Co.*, 84–1 CPD ¶ 52, 1984 WL 43702, at *2 (Comp. Gen. Jan.4, 1984).

Courts have recognized that there are certain instances when the standing inquiry under RCFC 12(b)(1) will require the court to engage, in essence, in a RCFC 12(b)(6) analysis to determine whether the plaintiff's claims are non-frivolous. *S.K.J. & Assoc., Inc. v. United States*, 67 Fed.Cl. 218, 223

(2005) (citing *Moden v. United States*, 404 F.3d 1335, 1341 (Fed.Cir.2005)). This inquiry is particularly appropriate in a pre-award bid protest such as this where the court must determine if the plaintiff has alleged a "non-trivial competitive injury which can be redressed by judicial relief." *Weeks Marine*, 575 F.3d at 1361. The Court's analysis of the standing issue will therefore necessarily test the legal sufficiency of Camden's third claim. *Knowledge Connections*, 76 Fed.Cl. at 15.

■ Camden argues that the Government has taken a "circular" position that conflates the issue of standing with the merits. Pl.'s Opp. at 7–9. Camden relies on two cases where the protestor was excluded from the competition for failure to comply with the mandatory terms of the RFP or IFB, and the court concluded that refusing standing to protest whether or not the proposal was responsive was a "circular argument." *See Dyonyx*, 83 Fed.Cl. at 469; *Tip Top Constr., Inc. v. United States*, 2008 WL 3153607 (Fed. Cl. Aug.1, 2008), *aff'd* 563 F.3d 1338 (Fed.Cir. 2009). Here, however, Camden is not alleging a failure to conform to the terms of the RFP; it alleges that its expired offer should be revived. A firm that has either failed to submit an offer or has withdrawn from the procurement does not have an economic interest sufficient to confer standing. *Labatt Food Serv.*, 577 F.3d at 1381; *Impresa*, 238 F.3d at 1334; *MCI Telecomm. Corp. v. United States*, 878 F.2d 362, 365 (Fed.Cir.1989). A firm whose offer has expired is similarly not an interested party. *See, e.g., Co–Mate Constr. Co.*, 1984 WL 43702, at *2 (finding that "Co–Mate is not an interested party" because it failed to extend its offer).

The Government's standing argument is not circular, and the Court will examine the revival claim for the existence of standing, which is a matter of subject matter jurisdiction under RCFC 12(b)(1).

As a matter of general contract law, an offeror may designate both the means of acceptance and the amount of time that the offer will remain open. *See* 1 E. Allan Farnsworth, FARNSWORTH ON CONTRACTS § 3.19 (3d ed.2004); 1 WILLISTON ON CONTRACTS § 5.5 (Richard A. Lord, ed. 4th

ed.1995). Once the offer has expired, the offeror may revive the offer either expressly or impliedly through conduct. 1 WILLISTON ON CONTRACTS § 5.5. Revival through conduct can be shown through "further negotiations ... indicat[ing] a continued willingness to stand by the terms of [the] offer." *Id.; see also Int'l Graphics Div. of Moore Bus. Forms, Inc. v. United States,* 4 Cl.Ct. 515, 519 (1984).

■ In government contracts, an offeror may revive its offer only if such revival does not compromise the integrity of the competitive process or prejudice other offerors.[6] *See Rice Servs., Ltd. v. United States,* 25 Cl.Ct. 366, 368 (1992); *Int'l Graphics Div.,* 4 Cl.Ct. at 520; *see also CDA Inv. Tech., Inc.,* 97–1 CPD ¶ 103, 1997 WL 106103, at *5 (Comp. Gen. March 11, 1997); *Esprit Int'l Corp.,* 97–1 CPD ¶ 106, 1997 WL 108960, at *1 (Comp. Gen. March 10, 1997); *Mission Van & Storage Co., Inc.,* 74–1 CPD ¶ 195, 1974 WL 8576, at *4 (Comp.Gen. Apr.15, 1974); *Postmaster Gen.,* 1963 CPD ¶ 26, 1963 WL 1905, at *4 (Comp.Gen. Apr.29, 1963).

■ Permitting revival of an offer would compromise the integrity of the competitive process if the offeror designated a shorter acceptance period than that requested by the solicitation, and other offerors specified the longer period. *Esprit Int'l Corp.,* 1997 WL 108960, at * 1; *The Vemo Co.,* 1991 WL 251283, at *2; *Fred Rutledge,* 84–1 CPD ¶ 297, 1984 WL 43499, at *1 (Comp.Gen. March 13, 1984); *Postmaster Gen.,* 1963 WL 1905, at *4. If an offeror shortens the length of time its offer is open, it faces less exposure to the market risk of price fluctuation than other offerors. *Postmaster Gen.,* 1963 WL 1905, at *4; *see also Esprit Int'l Corp.,* 1997 WL 108960, at * 1. Permitting an offeror to revive its offer after the shorter acceptance period has expired would be unfair, because

it would allow the offeror to take its risk in increments, assessing after its offer expired whether the market situation had changed, while other offerors have no such opportunity. *See Postmaster Gen.,* 1963 WL 1905, at *4 ("[B]y limiting its bid acceptance period to 20 days [the offeror] assumed the risk that the government due to unforeseen causes might be unable to accept within 20 days but, at the same time, it did not assume the risk of a price increase in the supplies during the following 40–day period as did [the other offeror] in granting 60 days for acceptance."). Camden limited its market exposure by keeping its offer open for only 60 days, and permitting Camden to now revive its offer would give it an advantage over the other offerors who will have risked market price fluctuation for the full 360 days. Thus, the rationale for refusing to permit revival of expired offers is fully applicable here.

Camden argues that this rationale does not support refusing revival of its offer, making three distinct arguments: (1) it maintains that there is a relevant difference between RFPs and IFBs; (2) it believes certain Armed Services Board of Contract Appeals ("ASBCA") case law supports revival; and (3) it contends that the issuance of Amendment 0012, asking offerors to hold their offers open another 150 days, for a total of 360 days, supports revival. None of these arguments are persuasive.

Camden first argues that in the RFP context, unlike in the context of an IFB, "often an offeror ... has the opportunity to revise its offer through discussions ... [and] can change nearly every aspect of its proposal, including price." Memorandum in Support of Camden Shipping Corporation's Application for a Temporary Restraining Order ("Pl.'s TRO Mem.") at 7 (docket entry 4, Sept. 11, 2009). Camden contends that there would be no prejudice to the other offerors in

---

**6.** The case law refers to the integrity of the "competitive *bidding* process" and prejudice to other "*bidders*" in both the RFP and IFB contexts. *See, e.g., Rice Servs.,* 25 Cl.Ct. at 368(RFP); *Esprit Int'l Corp.,* 1997 WL 108960, at *1 (IFB). An "offer" is a response to a solicitation or RFP; a subset of an "offer" is a "bid," which is an offer made in response to an IFB. *See* Ralph C. Nash, Jr. et al., THE GOVERNMENT CONTRACTS REFERENCE BOOK. A COMPREHENSIVE GUIDE

TO THE LANGUAGE OF PROCUREMENT 59, 371 (2d ed.1998). A response to an RFP may properly be described as a "proposal," or as an "offer," but it is not, technically speaking, a "bid." *Id.* at 59. Because MSC issued an RFP, not an IFB, the Court will refer to the more general harm to the "competitive process" except when quoting from a case that uses the "competitive *bidding* system" language.

the RFP context because pursuant to FAR § 15.208(b)(2), the offerors "may unilaterally lower [their] price at any time, without withdrawing [their] proposal[s]." Pl.'s TRO Mem. at 14.

Camden's reliance on FAR § 15.208(b)(2) is misplaced. Section 15.208 addresses when, if ever, the Government may accept late proposals: FAR § 15.208(b)(2) creates one of several exceptions to the general rule against accepting late revisions, namely, if the proposal would otherwise have been successful and it offers terms more favorable to the Government. *See Argencord Mach. & Equip., Inc. v. United States,* 68 Fed.Cl. 167, 173 (2005) (describing the "late is late" rule and its exceptions). The regulation allows the offeror to *lower* its price only if it has already been selected as the successful offeror. *Id.; see Sandi Group, Inc.,* 2009 CPD ¶ 123, 2009 WL 1676114, at *3 (Comp.Gen. June 5, 2009). Additionally, while the offeror may unilaterally withdraw its offer before the award is made, FAR § 15.208(e), such withdrawal would not lessen the marketplace risk to an awardee because the offeror that withdraws its offer would not be permitted to submit a new offer or revive its withdrawn offer under the same principle that prevents Camden from reviving its expired offer. *See Rice Servs.,* 25 Cl.Ct. at 368 n. 1.

Offerors in an RFP still expose themselves to marketplace risks even though they might be able to change their offer price through negotiation. *See Data Express,* 89–1 CPD ¶ 507, 1989 WL 240730, at *2 (Comp.Gen. May 25, 1989); *Rutledge,* 1984 WL 43499, at *1. The FAR permits the agency to engage in negotiations after the establishment of a competitive range, but in no way mandates such discussions. FAR § 15.306(d). All offerors were therefore at risk of being bound to their proposal at any time while their offers remained open. As such, the general principle that revival of an expired offer is improper if it would cause harm to the competitive process is equally applicable in the IFB and RFP contexts, and Camden's argument fails.

Camden next argues that a case decided by the ASBCA supports revival of its proposal. *Military Indus. Supply Co.,* 94–3 BCA ¶ 27238, 1994 WL 577584 (A.S.B.C.A. Oct.12, 1994) ("*MISC*"); Pl.'s TRO Mem. at 8. Camden is again mistaken. *MISC* involved a different contracting principle: if the Government engages an offeror in discussions, and those discussions continue after the date the offer would expire, then the continued negotiations impliedly extend the offer. In *MISC,* a change in market conditions made it more costly to provide the product that MISC had pledged to provide. *MISC,* 1994 WL 577584, Findings of Fact ¶ 11. Yet, because MISC's offer remained open, the Army was able to accept its terms and bind MISC to the price it had proposed even after expiration of the acceptance period specified in its offer. *Id.* Here, there were no continued negotiations (or negotiations of any kind), and therefore *MISC* provides no support for Camden's position.

Finally, Camden argues that the issuance of Amendment 0012, which required the remaining offerors to hold open their offers an additional 150 days, prevented any prejudice to the remaining offerors as a result of permitting Camden to revive its offer. Pl.'s TRO Mot. at 15. Camden claims that because MSC is still not prepared to make an award, "none of the offerors are truly accepting any market risk" because "there is no chance that any offeror will be locked into an unfavorable price." *Id.* Camden reiterated this contention at oral argument, stating that the case law only prohibited revival if the court found that "actual prejudice" occurred "in reality" to the other offerors. Oral Argument Tr. at 31–32. Camden argues that there can be no finding of prejudice to other offerors because it has consistently attempted to stand by its offer and has not attempted to "game the system" or minimize its exposure to market risk. *Id.* at 44.

But whether or not Camden intended to "game the system" or whether the other offerors were actually prejudiced, permitting Camden to revive its expired offer would harm the *competitive process itself,* and it is this harm that the GAO and courts have recognized as precluding revival in circumstances such as these. *See, e.g., Esprit Int'l Corp.,* 1997 WL 108960, at *1 (finding that permitting revival would "compromise the

integrity of the competitive bidding process" without discussing whether rival bidders were actually prejudiced); *Envtl. Tectonics Corp.,* 75–2 CPD ¶ 266, 1975 WL 7927, at *9 (Comp.Gen. Oct.31, 1975) (same); *Mission Van,* 1974 WL 8576, at *4 (same). The "risk" described in the case law is that, on the one hand, at any time during the remaining offerors' acceptance periods, MSC could have contractually bound them at their original prices—not whether MSC actually caused them to be bound. On the other hand, after February 20, 2009, the Government could *not* have bound Camden to its offered price. *See Postmaster Gen.,* 1963 WL 1905, at *4. Such a result constitutes harm to the competitive *process,* and Camden therefore should not be permitted to avoid the full market risk other offerors have borne by reviving its offer after expiration of its shorter acceptance period.

Even assuming the truth of Camden's allegations, the law is clear that Camden was not entitled to revive its offer. Camden cannot show that there was a non-trivial competitive injury capable of being redressed by this Court, and Camden therefore lacks standing to pursue its third claim. *Labatt Food Serv.,* 577 F.3d at 1381; *Impresa,* 238 F.3d at 1334. Alternatively, even if one were to assume that Camden did have standing to pursue its claim based upon the alleged revival of its offer, that claim would fail as a matter of law.

## IV. Conclusion

For the reasons set forth above, Camden's first and second claims fail as a matter of law and the Government's motion to dismiss them pursuant to RCFC 12(b)(6) is **GRANTED.** As to Camden's third claim, because it cannot revive its expired proposal, Camden does not have standing to protest MSC's decision to remove it from consideration for award on that basis, and the Government's motion to dismiss this claim pursuant to RCFC 12(b)(1) is **GRANTED.** Alternatively, even if one were to assume that Camden did have standing to pursue its third claim, that claim would fail as a matter of law and would have to be dismissed pursuant to RCFC 12(b)(6). The Clerk is directed to enter judgment in accordance with this opinion, dismissing Camden's first and second

claims with prejudice pursuant to RCFC 12(b)(6) and dismissing its third claim without prejudice pursuant to RCFC 12(b)(1).

**IT IS SO ORDERED.**

